UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

UNITED STATES OF AMERICA

v.

MICHAEL O'NEILL,

                Defendant.

**DECISION AND ORDER**

15-MJ-2116

───────────────────────────────

## I. INTRODUCTION AND BACKGROUND

On July 23, 2015, the Government filed a criminal complaint charging defendant Michael O'Neill ("O'Neill") with possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d).  (Dkt. No. 1.)  On July 30, 2015, the Court began a detention hearing at which the Government orally moved for detention. The Court continued the detention hearing until today to allow for briefing and further argument about certain issues that O'Neill has raised in an effort to win release.  Specifically, O'Neill argues that possession of an unregistered firearm does not constitute a "crime of violence" under 18 U.S.C. § 3142(f)(1)(A).  O'Neill argues also that any items that law enforcement agents seized from him were not designed or redesigned for use as a weapon and thus do not constitute "destructive devices" under 18 U.S.C. § 924(a)(4).  As a result, according to O'Neill, the Government has not met to the prerequisite under the Bail Reform Act of 1984 (the "Act"), 18 U.S.C. §§ 3141–3150, to hold a detention hearing and thus cannot ask for detention here.  The Government counters that O'Neill's use

of shrapnel and flash powder do make the seized items destructive devices. The Government also points out that it is not alleging a crime of violence here, choosing instead to rely on a newer section of the Act that postdates the major authority on which O'Neill relies.

## II. DISCUSSION

A review of how the Act manages detention hearings and findings of dangerousness will help resolve the issue that O'Neill has raised. Under the Act, courts cannot hold detention hearings or find dangerousness unless an alleged offense falls under one of the categories of offenses listed in 18 U.S.C. § 3142(f)(1) or (f)(2). In court and in the briefing filed yesterday, the Government rests its argument for detention on Section 3142(f)(1)(E). That part, added to the Act in 2006,[1] authorizes detention hearings and detention orders for "any felony that is not otherwise a crime of violence that . . . involves the possession or use of a firearm or destructive device (as those terms are defined in section 921)." 18 U.S.C. § 3142(f)(1)(E) (Westlaw 2015). Section 921 in turn defines "destructive device" as "any explosive, incendiary, or poison gas (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses." 18 U.S.C. § 921(a)(4)(A). Therefore, if the Government's

---

[1] *See* Adam Walsh Child Protection and Safety Act of 2006 § 216, Pub. L. 109-248, 120 Stat. 587 (Jul. 27, 2006).

allegations against O'Neill match the requirements of Sections 3142(f)(1)(E) and 921(a)(4)(A) then the Court has the authority to hold a detention hearing and to assess O'Neill's danger to the community.

The evidence that the Government has proffered on paper and in court indicates that Sections 3142(f)(1)(E) and 921(a)(4)(A) do apply here. In the complaint, the Government alleged the following against O'Neill:

> Upon further inspection, Bomb Squad personnel discovered what preliminarily appeared to be seven improvised explosive devices. Six of the devices were constructed of hard cardboard tubing, sealed ends, and a fuse. One of those devices was labeled, "Powder w/Nails." An additional device was made out of a flash light with sealed ends and hole with a wick coming from the center. Other items discovered on the property include two pill bottles labeled as flash powder, one bag of potassium perchlorate,[2] thirty-six shotgun shells reloaded with fragments inside, one plastic bottle of triple seven powder, one plastic box of triple seven pellets, and plastic bottle labeled as triple seven powder.

(Dkt. No. 1 at 3.) "On July 22, 2015, Erie County Sheriff's Bomb Squad Commander Dan Walczak x-rayed the device labeled 'Powder w/Nails.' The x-ray revealed nails packed into the device. The device was then disassembled. Inside the device were multiple nails, BB's and suspected flash powder." (*Id.* at 4.) The Government alleged further that "O'Neill stated he was using extra

---

[2] The Court takes judicial notice that potassium perchlorate, $KClO_4$, "is a common oxidizer used in fireworks, ammunition percussion caps, explosive primers, and is used variously in propellants, flash compositions, stars, and sparklers. It has been used as a solid rocket propellant, although in that application it has mostly been replaced by the higher performance ammonium perchlorate." "Potassium perchlorate," https://en.wikipedia.org/wiki/Potassium_perchlorate (last visited August 5, 2015).

3

materials from the M80's[3] to make 'something.'" (*Id.*) The Government reiterated this information at the detention hearing and added that at least one device found was made entirely of metal and looked like a typical pipe bomb. For any future suppression motions or other pretrial proceedings, O'Neill is free to challenge the details of what law enforcement agents found in his garage. For purposes of a detention hearing, the Government has made a reliable proffer that O'Neill possessed and was working on devices that included explosive powder, shrapnel that explosive powder would eject, and a means for detonation. Even if the Court credited O'Neill with a proffer of an innocuous reason for possessing explosive powder and a means for detonating it, there is no non-malevolent explanation for why that explosive powder needed to contain or to be associated with nails and other shrapnel.[4] Section 921(a)(4)(A) does not contain a definition of the word "bomb," but the word commonly means "[a]n explosive weapon that can be detonated by impact, trigger, fuse, proximity, timing device, or remote control." *Bomb*, Black's Law Dictionary (10th ed. 2014), *available in* Westlaw. The devices that O'Neill allegedly possessed—with their combination explosive

---

[3] The Court takes judicial notice that the firecrackers known as M-80s "often hold approximately 2½–3 grams of pyrotechnic flash powder; many sources state that an M-80 carries 3 grams of powder." "M-80 (explosive)," https://en.wikipedia.org/wiki/M-80_(explosive) (last visited August 5, 2015).

[4] Given the totality of the evidence in favor of detention, the Court will sidestep the likelihood that any explanation of intent from O'Neill would be irrelevant. *See U.S. v. Sheehan*, No. 13-CR-0186 (DRH), 2014 WL 3490323, at *18 (E.D.N.Y. July 11, 2014) ("What defendant created, rather than what he intended to create controls under this subsection of § 921(a).") (citation omitted).

powder, shrapnel, and means for detonation—fit the common definition of a "bomb" or, at a minimum, were similar to a bomb. The devices thus constitute "destructive devices" under 18 U.S.C. § 921(a)(4)(A). In turn, O'Neill's alleged felony involved possession or use of a destructive device under 18 U.S.C. § 3142(f)(1)(E). The Court thus has the authority to conduct a detention hearing and to assess O'Neill's danger to the community.

The authority that O'Neill has cited does not change the above analysis. *U.S. v. Posnjak*, 457 F.2d 1110 (2d Cir. 1972), concerned commercially available dynamite that did not have shrapnel (nails) in it. *U.S. v. Carter*, 996 F. Supp. 260 (W.D.N.Y. 1998), proceeded under 18 U.S.C. § 3142(f)(1)(A) at a time when Section 3142(f)(1)(E) did not exist. Since these cases address different statutory provisions and factual scenarios, the Court will not consider them further.

With its authority to conduct a detention hearing established, the Court can proceed to assess the factors under Section 3142(g). O'Neill faces charges that involve an explosive or destructive device. The evidence against O'Neill includes direct observation of destructive devices in various stages of completion. O'Neill allegedly admitted to modifying M-80s to use their contents for other purposes that he would not disclose. That admission necessarily implies possession of the M-80s. Without infringing on the presumption of innocence, the evidence thus appears strong. Under these circumstances, the Court finds by clear and

convincing evidence that O'Neill poses a danger to the community that no combination of conditions can address.

The last issue to address concerns medical treatment. The Court had delayed placing O'Neill in official United States Marshals Service ("USMS") custody because defense counsel had expressed concern that the logistics of USMS custody would infringe on O'Neill's ongoing medical treatment. The Court will not delay placing O'Neill into custody any longer but directs the USMS to take all reasonable steps necessary to ensure O'Neill's continued treatment. O'Neill may revisit this issue in the future if necessary.

### III. CONCLUSION

For all of the foregoing reasons, the Court grants the Government's oral motion for detention and orders O'Neill detained.

O'Neill will remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, and pursuant to 18 U.S.C. § 3142(i)(3), the Attorney General must afford O'Neill reasonable opportunity for private consultation with counsel. *See also U.S. v. Rodriguez* ("Rodriguez I"), No. 12-CR-83S, 2014 WL 4094561 (W.D.N.Y. Aug. 18, 2014) (Scott, *M.J.*). Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which O'Neill is

confined must deliver O'Neill to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case. *See also U.S. v. Rodriguez* ("Rodriguez II"), No. 12-CR-83S, 2015 WL 1120157, at *7 (W.D.N.Y. Mar. 12, 2015) (Scott, *M.J.*) (interpreting 18 U.S.C. § 3142(i)(4) to allow transports to prepare for an oral argument or hearing).

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order will be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

\_\_/s Hugh B. Scott_____
HONORABLE HUGH B. SCOTT
UNITED STATES MAGISTRATE JUDGE

DATED: August 5, 2015

7