1                    UNITED STATES DISTRICT COURT

2                    WESTERN DISTRICT OF NEW YORK

3

4   - - - - - - - - - - - - - -X
    UNITED STATES OF AMERICA              15-CR-151(W)
5
    vs.
6                                         Buffalo, New York
    MICHAEL C. O'NEILL,                   August 5, 2015
7              Defendant.                 10:24 a.m.
    - - - - - - - - - - - - - -X
8

9                    TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE HUGH B. SCOTT
10                UNITED STATES MAGISTRATE JUDGE

11

12                    WILLIAM J. HOCHUL, ESQ.
                      United States Attorney
                      BY: JOHN ALSUP, ESQ.
13                    Assistant United States Attorney
                      138 Delaware Avenue
14                    Buffalo, New York 14202

15

16                    JOSEPH M. LATONA, ESQ.
                      403 Main Street
                      Suite 716
17                    Buffalo, New York 14203
                      Appearing on behalf of the Defendant
18

19  ALSO PRESENT:        Jaclyn Sainsbury, U.S. Probation Office
                         Curtis Middlebrooks, U.S. Probation Office
20                       Brian Mamizuka, U.S. Probation Office

21

22  AUDIO RECORDER:      Joe Ippolito

    TRANSCRIBER:         Christi A. Macri, FAPR-CRR
23                       Kenneth B. Keating Federal Building
                         100 State Street, Room 2120
24                       Rochester, New York 14614

25  (Proceedings recorded by electronic sound recording,
    transcript produced by computer).

1              P R O C E E D I N G S

2                      *    *    *

3          (**WHEREUPON**, the defendant is not present).

4          **THE CLERK:** This is case number 15-MJ-2116, United

5   States vs. Michael O'Neill, detention hearing.

6          Jaclyn Sainsbury and Brian Mamizuka are here for

7   Probation.

8          Counsel, please state your names and the parties

9   you represent for the record.

10          **MR. ALSUP:**  Jack Alsup for the United States.

11   Good morning, Your Honor.

12          **MAGISTRATE JUDGE SCOTT:**  Good morning.

13          **MR. LATONA:** Judge, Joe LaTona here on behalf of

14   Mr. O'Neill, who if Your Honor will recall has waived his

15   presence at this proceeding.

16          **MAGISTRATE JUDGE SCOTT:** Good morning.

17          **MR. LATONA:** Good morning, Judge.

18          **MAGISTRATE JUDGE SCOTT:**  All right.   This I

19   believe today is the continuation of a detention hearing that

20   we commenced wherein I believe you were asked to do some

21   submittals with respect to --

22          **MR. LATONA:** Yes, Judge, I think --

23          **MAGISTRATE JUDGE SCOTT:**  I received them.

24          **MR. LATONA:** Yes, Judge.   I think -- I think the

25   first order of business, and Your Honor had asked us to brief

1  the standing question, and I know that I submitted a

2  memorandum of law --

3          **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.

4          **MR. LATONA:**  -- as did the Government.

5          **MAGISTRATE JUDGE SCOTT:**  Correct.

6          **MR. LATONA:**  Judge, I've reviewed the cases that

7  they cited and, quite frankly, Judge, I think they support my

8  position.

9          I think clearly since the *Posnjak* case out of the

10  Second Circuit, it would have to be established that the

11  device in question had no lawful use.  That was echoed even

12  in the decision cited by the prosecution, all of which dealt

13  with Molotov cocktails that were used, threatened and people

14  were even out in that area.

15          This *Cruz* case cites *Posnjak*, follows it and said

16  that it only applies where there's no legitimate use.  The

17  situation I think on *Bubar*, which was a case cited by the

18  prosecution involving an arson fire with a fire bombing

19  situation, in that case the Second Circuit held it was not

20  until the individual arsonists entered this premises with the

21  detonating caps and the dynamite and the gasoline that the

22  material then is put together in the location.

23          And the Second Circuit even says only upon being

24  set up in the Sheldon plant, okay?  And, again, it echos that

25  there has to be a showing of no legitimate purpose whatsoever.

1          And that clearly is the law in this circuit and,

2   quite frankly, Judge, it's in the complaint itself where prior

3   to -- prior to any lawyer entering the picture or anything

4   like that when he was asked, he said he was going to blow up

5   tree stumps, which the Government expert in *Posnjak* on the

6   stand when he was cross-examined on this issue said, hey, if a

7   farmer wants to blow up tree stumps, that's not a destructive

8   device.

9          **MAGISTRATE JUDGE SCOTT:**  Let me ask you a question,

10  though, you know, I recall the argument of the other day and

11  I'm concerned, what purpose would shrapnel have in blowing up

12  a tree stump?

13         **MR. LATONA:** To make a cleaner cut, to make sure

14  that all the debris would be eliminated, Your Honor.

15         **MAGISTRATE JUDGE SCOTT:**  By shrapnel?

16         **MR. LATONA:**  Sure, sure.  Some metal in there

17  would clear it out to ground zero, exactly.  That would --

18  that would be the issue.

19         **MAGISTRATE JUDGE SCOTT:**  All right.

20         **MR. LATONA:** You know, Judge, I mean, the other

21  thing about it, it's ironic how in our business you keep

22  getting into it where you find some of these legal issues.

23         Quite frankly, it would be my view and I'm going to

24  have to research this as well, but, quite frankly, Judge,

25  based on the Second Circuit law, what I think is conspicuously

1  absent in this criminal complaint, and under the rules it's

2  got to state all essential facts, there is no statement by the

3  agent that this device has no legitimate use.  And I don't

4  think there's any way that they could.

5          And so, I mean, it even goes to the essence of

6  whether or not we even have a federal charge in this

7  particular situation.  So I think initially, and what we

8  briefed and what initially we argue is does the Government

9  have standing to ask for detention.

10          And I submit respectfully, even under that

11  particular subdivision where it talks about not otherwise a

12  crime, there's no reason for that language unless you're

13  talking about a crime of violence, which would trigger,

14  respectfully I think, Judge Feldman's decision in the *Carter*

15  situation.

16          **MAGISTRATE JUDGE SCOTT:**  What do you have to say,

17  Mr. Alsup?

18          **MR. ALSUP:** Obviously, Judge, the Government

19  couldn't disagree more.  And I think the Court hit the nail

20  on the head with what exactly shrapnel would do to an

21  incendiary device, or as the ATF is calling it, an improvised

22  explosive device.

23          I would proffer to the Court this: There is a,

24  simply put, I can show the Court pictures better than I can

25  say it.  These IED's are labeled with the shrapnel that is in

1  them.   There is absolutely no legitimate purpose whatsoever to

2  put shrapnel in a homemade bomb.

3           In addition, there is another picture of what

4  appears to be -- and this is only my assessment of it, and I

5  can have an ATF agent here authenticate these photographs,

6  there's an additional incendiary or IED device that is purely

7  made of metal.   It's not labeled because I don't think black

8  writing would show on it, but it is essentially a small pipe

9  bomb.

10          **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.

11          **MR. ALSUP:**  So the Government couldn't disagree

12  more about whether there was a legitimate use for the devices.

13          And if that's the case, Judge, the Bail Reform Act

14  clearly spells out that if you possess a firearm or a

15  destructive device, which these items are defined by, then we

16  can move for bail.

17          That's the issue and it's settled and we have

18  standing to move for detention.

19          **MAGISTRATE JUDGE SCOTT:**  Let me go back to this for

20  a moment.   3142(f)(1)(E) was added to the act in 2006.

21  That's the Bail Reform Act.   And it authorizes detention

22  hearings and detention orders for any felony that is not

23  otherwise a crime of violence that involves the possession or

24  use of a firearm or destructive device as is defined in 921.

25          Section 921 in turn defines destructive device as

1    any explosive, incendiary, poison gas, bomb, grenade, rocket

2    having a propellant charge of more than 4 ounces, missile

3    having an explosive or incendiary charge of more than one

4    quarter ounce, a mine or a device similar to any of the

5    devices described in those clauses I just read.

6              How do you meet that argument, Mr. Latona?

7              **MR. LATONA:**  I think it's answered in *Posnjak*, Your

8    Honor.  I think specifically the Second Circuit said there

9    that on the similar device, it has to constitute -- their

10   terms -- military ordinance, like a hand grenade, stuff

11   used by -- and that's the Second Circuit's phrase, not mine.

12             And in addition, Judge, when they -- when they

13   talked about the statutory exclusion, the term destructive

14   device shall not include any device which is neither designed

15   or redesigned for use as a weapon.  And they said that

16   statute has to be interpreted pursuant to the Rule of Lenity.

17             And *Posnjak*, the Second Circuit said it.  *Oba*, the

18   Ninth Circuit case, said once asserted, it has to be disproven

19   beyond a reasonable doubt.

20             I submit, respectfully, they haven't shown by a

21   preponderance of the evidence that this is a destructive

22   device.  The complaint does not make out a sufficient case

23   for probable cause to believe it is a destructive device.

24             And that's my position.  I mean, the charge itself

25   has to be addressed on a different day.  We're talking today,

1   but that's the answer.   The Second Circuit gave the answer.

2           **MR. ALSUP:**  Those are issues of proof, Judge.   If

3   we're talking about standing to -- for the Government to

4   detain the defendant, we've met that burden and we can

5   proceed.

6           **MAGISTRATE JUDGE SCOTT:**  Be back in ten minutes.

7           **MR. LATONA:**  Thank you, Judge.

8           **MAGISTRATE JUDGE SCOTT:**  Thank you.

9           (**WHEREUPON**, there was a pause in the proceedings).

10          **THE CLERK:** All rise.

11          **MAGISTRATE JUDGE SCOTT:**  Be seated, please.

12          **MR. ALSUP:**  Before the Court renders a decision, if

13  that's where you're going, Judge, I have one more fact to add.

14          **MAGISTRATE JUDGE SCOTT:**  No.

15          **MR. ALSUP:**  Okay.   Thank you, Your Honor.

16          **MAGISTRATE JUDGE SCOTT:**  That's the answer, no.

17          **MR. ALSUP:**  Okay.

18          **MAGISTRATE JUDGE SCOTT:**  And no to Mr. LaTona as

19  well.

20          **MR. LATONA:**  Okay.   I was just going to read that

21  passage.

22          **MAGISTRATE JUDGE SCOTT:**  I've heard the argument.

23          **MR. LATONA:**  Okay, yes.

24          **MAGISTRATE JUDGE SCOTT:**  Why don't -- we have a

25  written decision for this.   Mr. Ippolito will give you a

1  copy.

2          **MR. LATONA:**  Oh, we got it already?

3          **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.  All right,

4  counsel, you can digest that, but the Court has found that

5  there's no condition or combination of conditions that would

6  assure against the risk of danger that he poses.

7          I find that by clear and convincing evidence and

8  he's detained on that basis.  The basis for that is in the

9  decision.

10          This needs to be set for a preliminary hearing.

11          **MR. ALSUP:**  It does, Judge.

12          **MAGISTRATE JUDGE SCOTT:**  Today is the 5th.  Are we

13  going to base this on the date and time of the arrest?

14          **MR. ALSUP:**  Whatever the Court prefers.

15          **MAGISTRATE JUDGE SCOTT:**  All right.  I can

16  schedule this for the 9th -- well, 17th or 18th.  18th would

17  be better.

18          **MR. ALSUP:**  I can be here, Judge.

19          **MAGISTRATE JUDGE SCOTT:**  What's good for you,

20  Mr. LaTona?

21          **MR. LATONA:**  Yeah, Judge, I mean, one thing, I

22  wasn't even allowed to be heard on whether there were certain

23  conditions such as electronic monitoring, home confinement,

24  just a variety of things, Judge --

25          **MAGISTRATE JUDGE SCOTT:**  I thought we had -- we

1  were exploring not just the issue of standing, which I don't

2  think is an issue.   You can see in the decision that was

3  what --

4            **MR. LATONA:**  Well, standing was --

5            **MAGISTRATE JUDGE SCOTT:**  That's issue number one.

6            Number two, they had already proffered what they

7  had had on that issue.

8            **MR. LATONA:**  Judge --

9            **MAGISTRATE JUDGE SCOTT:**  Do you want to be heard on

10  this?

11            **MR. LATONA:**  Yeah, I do, I do.  I'm assuming --

12            **MR. ALSUP:**  Judge, so we're going to reopen the

13  detention hearing at this point?

14            **MAGISTRATE JUDGE SCOTT:**  Well, let me --

15            **MR. ALSUP:**  I think Mr. LaTona has to appeal.

16            **MAGISTRATE JUDGE SCOTT:**  I'm going to let

17  Mr. LaTona go ahead and make whatever argument.

18            **MR. LATONA:**  Thanks.  Yeah, Judge, I mean, I

19  imagine that what Your Honor did was rely on the Pretrial

20  Service report, which there are inaccuracies in that report.

21            **MAGISTRATE JUDGE SCOTT:**  Okay, go ahead.

22            **MR. LATONA:**  And I want you to know that before the

23  hearing it had to do with whether there was a pending case in

24  Lewiston.   I provided certificates of disposition to the

25  prosecution and pretrial indicating that case is over with.

1   It was resolved with driving while impaired, which means he

2   has no criminal convictions.

3           The other thing that was mentioned in this report

4   was a claim that there was an active pistol permit, and I

5   provided the prosecution and pretrial --

6           **MAGISTRATE JUDGE SCOTT:**  There is none.

7           **MR. LATONA:**  -- a letter from Judge Murphy saying

8   that the pistol permit has been suspended.

9           So those two issues in there were not accurate.

10          **MAGISTRATE JUDGE SCOTT:**  Okay, let's -- go ahead.

11          **MR. LATONA:**  That's -- that's the beginning part of

12  it, Judge.

13          Now, I was only here addressing standing, but if

14  there is, I don't think there has been any clear and

15  convincing evidence which is the required standard in order to

16  detain.

17          I don't think the prosecution has met its burden,

18  and I think there are other conditions and, quite frankly, my

19  reading of the Second Circuit law is they don't have a

20  presumption, but we do and that *Sabhnani* case of presumption

21  in favor of release.

22          And typically with an individual who is --

23          **MAGISTRATE JUDGE SCOTT:**  Hold on, hold on,

24  Mr. LaTona.  You can't -- there is an appeal that is

25  certainly ripe on this.  You can certainly appeal this

1    decision on the standing issue in particular.

2              So let me hear about detention.

3              **MR. LATONA:**  Yeah, Judge.   As to that, I think

4    there are a number of things I think for the Court to

5    consider.   Number one, the weight of the evidence.   And I

6    think there's a *bona fide* issue that this doesn't even

7    constitute a federal crime.

8              His physical and mental condition.   He had his leg

9    amputated.   I was with him the other day.   He cannot walk on

10   his own.   He has a walker to even get him to the bathroom and

11   back to his bed.   He is a patient at ECMC.   He has been

12   moved from general up to the rehabilitative process.   He has

13   stitches in his amputated stump.   He is in the process of

14   having a prosthesis device orchestrated for him.

15             He has no criminal conviction.

16             There has been no showing that on the two DWI

17   cases, that he ever failed to appear or ever abused any order

18   imposed by either one of those two courts.

19             His 68 year old mother is here.   She's a retired

20   registered nurse.   She certainly is an individual under the

21   statute, a designated person who would be willing to assume

22   supervision and report any violation to Your Honor.

23             She is in the process right now of trying to rent

24   an apartment that's a ground floor type situation so he

25   doesn't have to climb stairs.

1    She's been told by the landlord you got the

2 apartment. She just has to sign the lease. We're waiting

3 to see what happened today before obligating this young lady.

4 She would be with him basically 24/7.

5    And if necessary, a curfew with electronic -- you

6 got a guy who doesn't even have two legs. Where is he going

7 to go if you put a monitor on him or confine him, Judge?

8    You know what? When we look at the whole thing,

9 you know, who paid the price for this whole incident? This

10 guy doesn't have a leg now, okay?

11    And sometimes a higher authority sends a message

12 and perhaps that one was sent and I found him to be, albeit

13 lethargic with the pain medication, a lot of the other things

14 going on with him, Judge, you know, he understands what

15 happened. He gets it, Judge.

16    **MAGISTRATE JUDGE SCOTT:** You think so, huh?

17    **MR. LATONA:** I do, I really do. I wouldn't be

18 saying it if I didn't, Judge.

19    **MR. ALSUP:** Judge?

20    **MAGISTRATE JUDGE SCOTT:** Mr. Alsup?

21    **MR. ALSUP:** Judge, obviously there's two sides to

22 every story. There's no dispute that the defendant is -- had

23 his leg amputated, but he was also building and constructing

24 numerous IED's or improvised explosive devices.

25    Judge, I have an array of pictures here. He was

1    able to construct a few of them which I've indicated to the

2    Court, one of them appears to be a pipe bomb; another appears

3    to have been composed of nails and split shot.

4              There were additional materials found at the scene,

5    including one picture of numerous other cardboard tubes to

6    indicate the defendant was going to build additional bombs.

7              And in addition to that, Judge, I spoke with the

8    Marshal's Service about the medical care Mr. O'Neill might be

9    able to receive.   That will depend on his discharge from

10   ECMC.

11             Basically, his discharge papers from ECMC, whatever

12   is medically necessary, can be reasonably approved by the

13   Marshal's Service.   That needs to be complete.   There's no

14   issue as to medical care, according to my conversation with

15   the Marshal's Service.

16             The Government's motion is not as much based on

17   flight due to a physical condition, and it is based on

18   dangerousness.   And part of that dangerousness, Judge, if the

19   Court isn't aware, there's some very -- I do not mean to use

20   this term as a pun, but very inflammatory materials that were

21   found in the bomb making -- where the defendant 's alleged to

22   have made the bomb, including pictures of Nathan Bedford

23   Forrest, who was a leader of the Ku Klux Klan; a picture with

24   a motorcyclist that says Storm Trooper Nazi on Wheels.

25             In addition, confederate flags, a (indiscernible)

1   with the SS symbols on it; a picture of James Hatfield who,

2   according to brief research, is the patriarch of the Hatfield

3   family who conglomerated sort of a band of confederate

4   gorillas in the time of the Civil War.

5         So, Judge, if -- there is an ongoing operation.

6   There's the potential for this case to involve discriminatory

7   animus.   The Government -- and the fact the defendant has

8   built at least a couple bombs that we know of -- however you

9   want to call them, a destructive device, an incendiary device,

10  an improvised explosive device -- they're all the same thing.

11        And because of the additional material found in

12  there, and the fact that it's an ongoing operation should

13  strongly weigh in favor of detention because there is no

14  combination or no condition or combination of conditions that

15  can reasonably assure the safety of anyone in the community.

16        **MR. LATONA:**   Judge, I want to just quote

17  Judge Skretny, and this isn't a case that the Government had

18  in its brief, this fellow John Mikula, who was part of the

19  Army of God, you know, anti-abortion, hooked in with James

20  Kopp, who killed Dr. Barnett Slepian and all, here's what

21  Judge Skretny said: This Court agrees that the mere interest

22  in a radical organization does not alone support a finding of

23  dangerousness.   Rather, in the instant case it is the

24  defendant's expressed intent to kill abortion escorts and/or

25  providers and his documented, albeit unconsummated plans to

1   achieve this goal that suggests that his obsessive interest in

2   a violent faction of the anti-abortion movement makes him a

3   danger to others.

4          It's got to be action, not concept.   Not thought,

5   Judge.   And he calls them bombs.   He can call them what he

6   wants.   The bottom line is it's not a destructive device.

7   There hasn't been any showing, nor has there been any

8   indication that any of these items were going to be used

9   against a person or property of anyone else.

10   **MAGISTRATE JUDGE SCOTT:**   Let me ask you something:

11   Are you proposing that his mother be considered a

12   responsible --

13   **MR. LATONA:**   Yes, sir.

14   **MAGISTRATE JUDGE SCOTT:**   He was living with his

15   mother when this occurred?   When this allegedly occurred?

16   **MR. LATONA:**   With his stepfather and --

17   **MAGISTRATE JUDGE SCOTT:**   This -- this content in

18   the household with his mother --

19   **MR. LATONA:** It wasn't in the house.   There was a

20   garage that he pretty much was reclusive and he would study a

21   lot of things and history and some other things --

22   **MAGISTRATE JUDGE SCOTT:**   I see.

23   **MR. LATONA:**   -- and bikers and all that kind of --

24   **MAGISTRATE JUDGE SCOTT:**   Okay, all right.

25   **MR. LATONA:**   I mean, the other thing -- the other

1   thing would be this, Judge, and the plan is to get an

2   apartment, a ground floor apartment, to get him away from all

3   of that stuff where he can get around without having to climb

4   stairs and she would be there.

5          There won't be any of this material there.

6          **MAGISTRATE JUDGE SCOTT:**  She's going to be his

7   custodian in some apartment that's not connected to her house?

8          **MR. LATONA:** Yes, that's our game plan.

9          **MAGISTRATE JUDGE SCOTT:**  She's going to move in

10  with the defendant?

11         **MR. LATONA:** Yes, that's our game plan.

12         **MAGISTRATE JUDGE SCOTT:**  That's what's proposed?

13         **MR. LATONA:** Yes, that's what the proposal was.   I

14  discussed it with her.   She's in the process of --

15         **MAGISTRATE JUDGE SCOTT:**  Does she work full time --

16         **MR. LATONA:** She's retired, she's a retired RN,

17  Judge.

18         **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.

19         **MR. LATONA:**  She's been told by the owner of the

20  property you got it, I have to put the lease together because

21  you couldn't get a month-to-month.   It's got to be a one year

22  lock solid lease.

23         **MR. ALSUP:**  Judge, we categorically ask that the

24  Court detain the defendant.   If Mr. LaTona wants to appeal,

25  he can reserve that right.

1              **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.

2              **MR. LATONA:**  You know, Judge --

3              **MAGISTRATE JUDGE SCOTT:**  Well, just give me a

4   chance --

5              **MR. LATONA:**  I'm sorry, Judge, I'm sorry.

6              **MAGISTRATE JUDGE SCOTT:**  Go ahead, Mr. LaTona.

7              **MR. LATONA:**  Judge, the only thing I was gonna say

8   is, you know, it's nice the marshals -- why don't we have any

9   concrete plans?  Where will he go?  Where will he stay?

10             **MAGISTRATE JUDGE SCOTT:**  That wouldn't be done

11  ahead of time.   And not only that, you're proposing that he

12  be released to an apartment that's not yet rented.   I mean,

13  it's not -- that's not where we are with this.

14             **MR. LATONA:**  We may know by the end --

15             **MAGISTRATE JUDGE SCOTT:**  That's not where we are

16  with this.

17             **MR. LATONA:**  All right.

18             **MR. ALSUP:**  Judge, I can tell --

19             **MAGISTRATE JUDGE SCOTT:**  On either side of the

20  argument that is not where you are.

21             **MR. LATONA:**  All right.

22             **MR. ALSUP:**  -- I can tell the Court in my

23  discussion with the marshals where he will likely be located.

24             **MAGISTRATE JUDGE SCOTT:**  That is a matter which I

25  don't direct.   The marshal will have to do that if he is

 1  detained.

 2              Now, is there anything else?

 3              **MR. LATONA:**  No, Judge.

 4              **MAGISTRATE JUDGE SCOTT:**  Anything else?

 5              **MR. ALSUP:**  I would just offer to the Court the

 6  photographs.

 7              **MAGISTRATE JUDGE SCOTT:**  Have them marked.   Show

 8  Mr. LaTona.   Have you seen these?

 9              **MR. LATONA:**  I've seen them.   Yeah, I mean, I

10  object because my view was we should have been granted a

11  hearing in the get-go.   So based on that objection --

12              **MAGISTRATE JUDGE SCOTT:**  Yeah, and that's

13  preserved.

14              **MR. LATONA:**   Thank you.

15              **MAGISTRATE JUDGE SCOTT:**  I'm going to accept these

16  as a composite exhibit.  Government's Exhibit 1, how many --

17              **MR. ALSUP:**  There are 16 I believe, Your Honor.

18              **MR. LATONA:**  Well, Judge, I would like to proffer,

19  if I can, you know, those two documents that indicate the

20  inaccuracies in the Probation report.   I don't have them

21  marked at all.   One is Judge Matt Murphy --

22              **MAGISTRATE JUDGE SCOTT:**  Let's have them.

23              Mr. Middlebrooks, is this yours?

24              **MR. MIDDLEBROOKS:**  Judge, it's actually

25  Officer Sainsbury's report, but we can add information on our

1   stance if the Court would like.

2          **MAGISTRATE JUDGE SCOTT:**  Well, go ahead.   But I

3   know we want you to consider what's being proffered to the

4   Court now.

5          **MR. MIDDLEBROOKS:**  I have seen the exhibits that

6   defense counsel provided.   He did give us a copy of those,

7   Judge.

8          **MR. LATONA:**  Yeah, I did.   To the prosecution and

9   the pretrial before the hearing.

10          **MAGISTRATE JUDGE SCOTT:**  All right, let me have

11   those pictures, if you would?

12          Mr. LaTona, have you seen these?

13          **MR. LATONA:**  Yes.  I mean, again, Judge -- Judge, I

14   have one another thing, and that would be a note from his

15   doctor July 31, I'll hand a copy of that to the prosecution.

16          This just indicates that while he's up in the rehab

17   there and the doctors view shackling and handcuffing of him is

18   going to require (inaudible).

19          **MAGISTRATE JUDGE SCOTT:**  Mm-hmm.   This is a rear

20   garage or something?  Tell me more about where this is located

21   because --

22          **MR. LATONA:**  Judge, it's about fifteen --

23          **MAGISTRATE JUDGE SCOTT:**   -- if she lives anywhere

24   near this, I would not consider -- go ahead.

25          **MR. LATONA:**  Yeah, it's detached from the home,

1  Judge.   It's a detached garage.

2          **MAGISTRATE JUDGE SCOTT:**  And she hasn't seen -- she

3  didn't know what was in there?

4          **MR. LATONA:**  No, not to my knowledge.   He

5  basically hung out there.   Well, if he gets an apartment --

6          **MAGISTRATE JUDGE SCOTT:**  I'm trying here --

7          **MR. LATONA:**  If he gets an apartment, none of that

8  stuff will be -- I mean, I understand, Judge, it's -- look it,

9  I don't like that stuff any more than you do, but thought is

10  not a basis --

11          **MAGISTRATE JUDGE SCOTT:**  No, no, no.  It's not

12  thought.   I'm looking at physically how someone could not

13  know this is on their property.   I mean, I'll be -- I'm just

14  going to be as -- how do you live on a piece of property and

15  not know this is going on in a garage?

16          I just don't know how to resolve that in my head.

17          **MR. LATONA:**  Well, you know, random visits, random

18  searches at the apartment could --

19          **MAGISTRATE JUDGE SCOTT:**  Yeah, I know.

20          **MR. MIDDLEBROOKS:**  Judge, we would oppose obviously

21  his release, as we noted in our report, based on the

22  information that was provided here today.

23          In addition, like the Court mentioned, the

24  defendant was residing with both his mother and his stepfather

25  at the time that these allegations occurred, and it's being

1  proposed that the mother reside with him now.  If it wasn't a

2  deterrent then, we don't see why that would be a deterrent at

3  this time.

4          Additionally, locking the defendant into his

5  residence we don't feel would mitigate the risk of danger

6  posed here.  He allegedly made these destructive devices in

7  his home.  Albeit in a detached garage, Judge, but still

8  where he was residing.

9          We feel that, you know, to release him to a home

10  and place him on supervision would potentially allow for the

11  defendant to continue in such activity, and also place

12  officers and the community at risk.

13          So for those reasons, coupled with the things

14  outlined in the pretrial report, we would stick with our

15  recommendation.

16          As it relates to the pistol permit and the pending

17  charges that are noted in the report, we were provided

18  documentation that shows that the defendant's pistol permit

19  was suspended.  We don't know if he actually had to surrender

20  that permit, but we do have documentation that it was

21  suspended.

22          As far as the pending charge in Lewiston, we do

23  have documentation that that case has been resolved.  But

24  it's our opinion that those were probably the two most minor

25  risk factors contained in the report.

1          So based on all the other conditions, plus what

2   we've already stated here in court today, we would stand by

3   our recommendation.

4          **MAGISTRATE JUDGE SCOTT:**  Yeah, I don't have a

5   rolling detention hearing.   This is, I think -- unless you

6   have something further?

7          **MR. ALSUP:**  No, Your Honor.

8          **MAGISTRATE JUDGE SCOTT:**  All right.

9          **MR. LATONA:**  I think you've covered everything.

10         **MAGISTRATE JUDGE SCOTT:**  All right, this Court is

11  mindful of its obligation under 3142(g), and that is to

12  consider the defendant's background, the nature and

13  circumstances of the present offense; his ties to the

14  community; and perhaps even whether he is a person who could

15  be supervised by a custodian.

16         In this instance, as is proffered by the defense, I

17  don't believe there's any condition or combination of

18  conditions which would assure against the risk of danger that

19  he poses.   I find this by clear and convincing proof.

20         I have adopted the Pretrial Services report of

21  Jaclyn Sainsbury, dated 29th of July 2015, and based upon that

22  and the facts that I've enumerated, he's detained, remanded to

23  the custody of the United States Marshal's Service.

24         Preliminary hearing I think we set for what, the

25  18th?

1          **MR. LATONA:**  I don't know if we got there.   Hang

2   on a minute, Judge.

3          **MAGISTRATE JUDGE SCOTT:**  Yeah, 18th at 10:00.

4          **MR. LATONA:**  Fine with me, Judge.

5          **MAGISTRATE JUDGE SCOTT:**  All right.   Of course,

6   Mr. LaTona, you can certainly appeal this --

7          **MR. LATONA:**  Thank you.

8          **MAGISTRATE JUDGE SCOTT:**  -- if you believe this is

9   not accurate.   All right, good day.

10          **MR. ALSUP:**  Thank you, Your Honor.

11          **MR. LATONA:**  Thanks.

12          (**WHEREUPON**, the proceedings adjourned at 11:10 a.m.)

13                         *    *    *

14                 <u>**CERTIFICATE OF TRANSCRIBER**</u>

15

16          In accordance with 28, U.S.C., 753(b), I certify that

17   this is a true and correct record of proceedings from the

18   official electronic sound recording of the proceedings in the

19   United States District Court for the Western District of New

20   York before the Honorable Hugh B. Scott on August 5th, 2015.

21

22   <u>S/ Christi A. Macri</u>

23   Christi A. Macri, FAPR-CRR
     Official Court Reporter

24

25