UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

UNITED STATES OF AMERICA,

v.                                                          **DECISION AND ORDER**

MICHAEL O'NEILL,                                15-CR-00151 EAW

        Defendant.

___

## BACKGROUND

Defendant was charged by criminal complaint dated July 23, 2015, with possession of a firearm not registered to Defendant in the National Firearms Registration and Transfer Record. Attached to the complaint is an affidavit of a law enforcement officer detailing the investigation into Defendant's alleged activities, including the recovery of "improvised explosive devices," including a piece of hard cardboard tubing with sealed ends and a fuse labeled "Powder w/ Nails" (the "Nails Device"). (Dkt. 1 at ¶ 5). The Nails Device was subsequently examined and determined to contain "multiple nails, BBs and suspected flash powder." (*Id.* at ¶ 7).

On August 13, 2015, Defendant was indicted on one count of unlawful making of a destructive device (a "pipe bomb") in violation of Title 26, United States Code, Sections 5822, 5845(a)(8), 5845(f), 5845(i), 5861(f), and 5871, and one count of unlawful possession of a destructive device (a "pipe bomb") in violation of Title 26, United States Code, Sections 5841, 5845(a)(8), 5845(f), 5845(i), 5861(d), and 5871. (Dkt. 11).

The Government sought a detention hearing on the grounds that Defendant was charged with a crime enumerated in 18 U.S.C. § 3142(f)(1)(E). A detention hearing was begun on July 30, 2015, before United States Magistrate Judge Hugh B. Scott. (Dkt. 4). A continuation of the detention hearing was held on August 5, 2015, at which Judge Scott granted the Government's motion to detain Defendant. (Dkt. 8, 9).

On November 9, 2015, Defendant filed a motion before this Court to revoke Judge Scott's detention order. (Dkt. 32). On November 10, 2015, the Government filed a response to Defendant's motion. (Dkt. 34). A hearing was held before the Court on November 12, 2015. In addition to considering the party's written and oral submissions, the Court also has reviewed the Pretrial Services Report prepared by the United States Probation Office dated August 5, 2015, the audio transcript of the detention hearing held before Judge Scott on July 30, 2015, the written transcript of the continued hearing held before Judge Scott on August 5, 2015 (Dkt. 23), and the exhibits presented therein, including Government Exhibits 1 through 16 (Dkt. 9-1). According to the Government, the "pipe bomb" referenced in the indictment is the Nails Device, which is depicted in Government Exhibit 3 (*see* Dkt. 9-1 at 3).

As set forth below, the Court finds that the Government has standing to seek a detention hearing as to Defendant and that the Government has shown by clear and convincing evidence that Defendant poses a danger to others and the community and that no condition or combination of conditions will reasonably assure the safety of others and the community.

## LEGAL STANDARD

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. The procedures and standards for release or detention of a person such as Defendant pending trial are set forth at 18 U.S.C. § 3142. A defendant awaiting trial must be released unless the release will present a risk of flight or dangerousness, or both, and no set of conditions can reasonably eliminate those risks. *See United States v. Berrios-Berrios*, 791 F.2d 246, 249 (2d Cir. 1986) (Bail Reform Act codified "traditional presumption favoring pretrial release for the majority of Federal defendants") (quotation omitted).

As a threshold matter, the Court may hold a detention hearing and detain a defendant only if the case involves one of the enumerated offenses set forth in § 3142(f)(1), or where the defendant presents a serious risk of flight, obstruction of justice, or threats to a witness or juror. 18 U.S.C. § 3142(f); *see also United States v. Dillard*, 214 F.3d 88, 90-91 (2d Cir. 2000). It is the Government's obligation to show, by a preponderance of the evidence, that the crime with which Defendant is charged is one of the crimes enumerated in § 3142(f)(1). *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988); *United States v. Goba*, 240 F. Supp. 2d 242, 246 (W.D.N.Y. 2003).

In reviewing a detention order of a Magistrate Judge, a District Judge should not simply defer to the judgment of the Magistrate Judge, but rather must reach her own independent conclusions. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "When making its *de novo* review, the district court may rely on the record of the proceedings

before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001).

## PROPRIETY OF DETENTION HEARING

"After a motion for detention has been filed, the district court must undertake a two-step inquiry. It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." *Friedman*, 837 F.2d at 49 (citations omitted). "The threshold issue presented [on this motion] is whether the government has demonstrated by a preponderance of the evidence that a detention hearing was warranted in this case." *United States v. Stevens*, No. 04-CR-222S, 2005 WL 483387, at *3 (W.D.N.Y. Mar. 2, 2005). Notably, it is not the Government's burden at this stage of the proceedings to prove by a preponderance of the evidence that Defendant actually committed the crime with which he is charged, but only to show that the crime with which he is charged is one of the crimes set forth in § 3142(f)(1). *See United States v. Campbell*, 28 F. Supp. 2d 805, 806-10 (W.D.N.Y. 1998); *see also United States v. Sulewski*, No. CRIM. 3:06CR64(CFD), 2006 WL 1549987, at *1 (D. Conn. May 31, 2006) (Government satisfies its initial burden by showing that Defendant has been indicted for crimes enumerated in § 3142(f)(1)).

In this case, the Government sought detention of Defendant pursuant to § 3142(f)(1)(E), which applies to "any felony that is not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device (as those terms are defined in section 921), or any other dangerous weapon. . . ." 18 U.S.C.

- 4 -

§ 3142(f)(1)(E). Specifically, the Government argued in front of Judge Scott and argues now that Defendant has been charged with making and possessing a "destructive device." (*See* Dkt. 8 at 2-3; Dkt. 34). A "destructive device" is defined under § 921 as "any explosive, incendiary, or poison gas (i) bomb, (ii) grenade, (iii) rocket having a propellant charge of more than four ounces, (iv) missile having an explosive or incendiary charge of more than one-quarter ounce, (v) mine, or (vi) device similar to any of the devices described in the preceding clauses." 18 U.S.C. § 921(a)(4)(A).

Defendant makes several arguments in support of his position that the Government lacked standing to move for detention in this matter. First, Defendant argues that pursuant to the Supreme Court's decision in *Bond v. United States*, 134 S. Ct. 2077 (2014), it would impermissibly intrude on the police power of New York State for a federal criminal statute to regulate the conduct alleged in the criminal complaint against Defendant. (Dkt. 32 at ¶¶ 38-43). Second, Defendant argues that the indictment against him is invalid. (*Id.* at ¶¶ 23-24). Third, Defendant argues that, as a matter of law, the devices recovered during the investigation into his activities do not constitute destructive devices, specifically because they were not designed or redesigned for use as a weapon. (*Id.* at ¶¶ 25-37). The Court considers each of these arguments below.

I.  **Defendant's Federalism Argument**

In *Bond*, the Supreme Court considered whether "an amateur attempt by a jilted wife to injure her husband's lover, which ended up causing only a minor thumb burn readily treated by rinsing with water" was properly prosecuted under a federal statute regulating the use and possession of a "chemical weapon." 134 S. Ct. at 2083. The

defendant in *Bond* contested her conviction on the basis of the Tenth Amendment, arguing that the statute under which she was prosecuted "exceeded Congress's enumerated powers and invaded powers reserved to the States by the Tenth Amendment." *Id.* at 2085. The Supreme Court avoided the constitutional question by examining the language used in the statute against the background principle that the punishment of purely local criminal activity is an area of traditional state authority and concluding that the phrase "chemical weapon" did not encompass the chemicals used by the defendant in her attempt to injure her husband's lover. *Id.* at 2087-2092; *see also United States v. Levenderis*, No. 14-4004, 2015 WL 7003308, at *4 (6th Cir. Nov. 12, 2015) ("In its *Bond* decision, the Supreme Court avoided addressing the constitutional issue, holding instead that, as a matter of statutory interpretation, § 229(a) did not cover the defendant's unremarkable local offense.") (quotation omitted).

Defendant argues that *Bond* calls into question the legitimacy of the Government's prosecution of his "local" crime. (Dkt. 32 at ¶¶ 38-42). Specifically, Defendant argues that because New York State has a statutory scheme regulating the possession of explosives, the Government's prosecution of him intrudes on the police power of the state. (*Id.*). Defendant's argument misapprehends the scope of the *Bond* decision.

Even within the context of chemical weapons (the very subject matter considered in the *Bond* decision), the Second Circuit has explained that a crime is not "local" (and therefore the traditional province of the state) where it exposes many members of the public to danger and has the potential to cause mass suffering. *United States v. Kimber*, 777 F.3d 553, 561 (2d Cir. 2015), *cert. denied*, 136 S. Ct. 170 (2015). The possession of

a destructive device, as defined in 18 U.S.C. § 921(a)(4)(A), plainly meets this criteria and is therefore not a purely local crime. "That [defendant's actions] happened not to cause significant injury is not dispositive.[1] Rather, it is sufficient that he placed many people at risk of serious harm." *Kimber*, 777 F.3d at 561. The Second Circuit's holding is consistent with the Supreme Court's statement in *Bond* that "[t]he Federal Government undoubtedly has a substantial interest in enforcing criminal laws against assassination, terrorism, and <u>acts with the potential to cause mass suffering</u>. Those crimes have not traditionally been left predominantly to the States, and nothing we have said here will disrupt the Government's authority to prosecute such offenses." 137 S. Ct. at 2092 (emphasis added).

In other words, Defendant assumes without explanation that the making and possession of destructive devices is a "purely local crime." (*See* Dkt. 32 at ¶ 39). This is not the case. Destructive devices, by their very nature, have the potential to harm significant numbers of people. *See United States v. Posnjak*, 457 F.2d 1110, 1118 (2d Cir. 1972) (destructive devices are covered by the statute "because of their objective physical nature"). The regulation of destructive devices designed to be used as weapons does not offend federalism and is not prohibited by the Supreme Court's decision in *Bond*.

---

[1] In this case, Defendant's actions did cause significant injury, albeit only to himself.

## II. Defendant's Arguments regarding the Indictment and the Definition of Destructive Device

Defendant also argues that he cannot be lawfully detained because the grand jury that returned the indictment against him was not properly instructed as to the contours of the law and was not presented with adequate evidence that Defendant had constructed a "pipe bomb" that had no legitimate uses. (Dkt. 32 at ¶ 23). This argument is intertwined with Defendant's contention that the Nails Device was not a destructive device because he intended to use it for the legitimate purpose of removing tree stumps. (*Id.*).

As Defendant notes, the statutory scheme excludes from the definition of destructive device "any device which is neither designed nor redesigned for use as a weapon." (*Id.* at ¶ 34 (citing 18 U.S.C. § 921(a)(4)(C) and 26 U.S.C. § 5845(a)(f))). The Second Circuit considered this statutory exception in *Posnjak*, explaining that Congress had intended to regulate "clearly identifiable weapons which were the cause of increasing violent crime and which had no lawful uses" and that "the intent of the user of these weapons was irrelevant, as they were so prone to abuse that they were considered *per se* dangerous and unnecessary for legitimate pursuits." 457 F.2d at 1116. In other words, the statute regulates items that are weapons by nature, without regard to what the Defendant intended to do with them. *Id.* ("'[D]esigned' in this context refers to objective, physical structure or method of operation and not to intent or schemes of the possessor."); *see also United States v. Sheehan*, No. 13-CR-0186 (DRH), 2014 WL 3490323, at *18 (E.D.N.Y. July 11, 2014) ("What defendant created, rather than what he intended to create controls. . . .").

There are several issues that the Court must untangle in assessing Defendant's arguments. As an initial matter, the Court must consider what burden the Government bears, at this stage of the proceedings, with respect to the statutory exception discussed above. Defendant argued to the Court at oral argument on the instant motion that, at trial, the Government would bear the burden of proving beyond a reasonable doubt that the Nails Device had no legitimate use. While this may be the case (*see United States v. Reindeau*, 947 F.2d 32, 36 (2d Cir. 1991)), the Government's burden at trial is not the same as its burden in the context of a detention hearing. As discussed above, to establish its standing to seek detention, the Government must demonstrate by a preponderance of the evidence that Defendant has been charged with a crime enumerated in § 3142(f)(1). *See Friedman*, 837 F.2d at 49; *Campbell*, 28 F. Supp. 2d at 806. The Court's inquiry then "turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." *Friedman*, 837 F.2d at 49. Although the strength of the evidence against the defendant is a factor to be considered in determining whether detention is necessary (*see Leon*, 766 F.2d at 81), and while the Government must establish by clear and convincing evidence Defendant's dangerousness justifying detention (*see United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 1985)), at no point does the Government bear the burden of proving, at a detention hearing, guilt beyond a reasonable doubt. "[B]ail hearings should not become mini-trials," *United States v. Delker*, 757 F.2d 1390, 1396 (3d Cir. 1985), and Defendant has cited no persuasive authority in support of his contention that the

Government was required to present expert testimony at the detention hearing (or before the grand jury) on the issue of whether there was a legitimate use for the Nails Device.

Moreover, it is well-established that "[t]he rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citation omitted); *see also United States v. Carswell*, 144 F. Supp. 2d 123, 127 (N.D.N.Y. 2001) ("The rules governing the actual hearing and the ultimate detention decision are now well established. The evidence may be introduced by proffer since normal evidentiary rules do not apply."). In other words, the Government's initial burden in the context of a detention hearing is to demonstrate by a preponderance of the evidence that the defendant has been charged with a crime enumerated in § 3142(f)(1), and it may meet that burden with evidence that does not meet the standards for admissibility at a subsequent criminal trial. Arguments about whether Defendant in fact committed the crime with which he is charged are simply not the focus of a detention hearing.

Similarly, Defendant's arguments regarding the propriety of the grand jury's indictment are not properly raised in the context of a detention hearing. "[A] grand jury indictment cannot be undermined by an independent judicial determination finding no probable cause <u>in the context of a detention hearing</u>. We cannot hold otherwise in the absence of clear congressional intent directing this court to disturb longstanding legal authority and, in addition, to impose this significant burden on the district courts." *United States v. Contreras*, 776 F.2d 51, 54 (2d Cir. 1985) (citations omitted and emphasis added). "The inviolability of the grand jury's findings is based upon the belief

that the grand jury plays an historical role of protecting individuals from unjust prosecution." *Id.* (quotation omitted); *see also Kaley v. United States*, 134 S. Ct. 1090, 1098 n.6 (2014) ("The grand jury's unreviewed finding similarly may play a significant role in determining a defendant's eligibility for release before trial under the Bail Reform Act of 1984. . . ."); *United States v. Salkicevic*, No. 15 CR 0060, 2015 WL 525556, at *3 (N.D. Ill. Feb. 10, 2015) ("[T]he defendant says the indictment counts for little, and that I have no evidence before me that I can consider [with respect to the statutory factors set forth in § 3142(g)]. That is an illogical position and one contrary to all the cases."). Although *Contreras* was decided in the context of an inquiry into probable cause and a rebuttable presumption under § 3142(e), its reasoning applies in this context, as well. The Federal Rules of Criminal Procedure provide procedural mechanisms by which a defendant may challenge the grand jury proceeding and the resulting indictment; a detention hearing is not one of them.

*United States v. Acquest Dev., LLC*, 932 F. Supp. 2d 453 (W.D.N.Y. 2013), upon which Defendant relies, is inapposite. The *Acquest* decision was issued on a motion seeking dismissal of the indictment, not in the context of a detention hearing. *Id.* at 456. Moreover, the *Acquest* decision acknowledged the well-establish proposition that "indictments may not be challenged 'on the ground that they are not supported by adequate or competent evidence.'" *Id.* at 456 n.3 (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)). In sum, Defendant's argument that "[t]his Court should examine the grand jury proceedings to ascertain whether any [expert] evidence was presented to that body" and that "[t]his Court should also ascertain what evidence was proffered to

establish that a 'pipe bomb' was made or possessed" (Dkt. 32 at ¶ 23) is not properly made in the context of a detention hearing.

Applying the principles discussed above, the Court concludes that the Government has adequately demonstrated that Defendant has been charged with making and possessing a destructive device. A grand jury has returned an indictment charging Defendant with both the making and unlawful possession of a pipe bomb. In other words, the indictment charges that the Nails Device constituted a pipe bomb, and "[t]he term 'destructive device' . . . plainly includes a pipe bomb." *United States v. Dodge*, 842 F. Supp. 643, 644 (D. Conn. 1994). There is evidence that Defendant made and possessed the Nails Device, which consisted of a piece of hard cardboard tubing with sealed ends and a fuse and containing nails, BBs, and suspected flash powder. (Dkt. 1 at ¶¶ 5, 7). Although Defendant claims that he intended to use the Nails Device for clearing a tree stump, the relevant inquiry is whether the "objective, physical structure" of the Nails Device is weaponized, not Defendant's "intent or schemes." *Posnjak*, 457 F.2d at 1116.

Federal courts have not hesitated to find that similar items constitute destructive devices. *See United States v. Waits*, 581 F. App'x 432, 435 (5th Cir. 2014) ("Regardless of [co-defendant's] stated intent to use the device to blow up stumps, its design demonstrates that it was an explosive pipe bomb capable of releasing shrapnel, which meets the definition of a destructive device."); *United States v. Hammond*, 371 F.3d 776, 780-81 (11th Cir. 2004) ("a cardboard tube explosive device . . . could be designed to include tacks, nails, or other small metal pieces. A device so designed would be an

explosive 'plus' and would appear to support a jury's finding that the device was designed as a weapon"); *United States v. Johnson*, 152 F.3d 618, 627 (7th Cir. 1998) ("There appears to be no question that the devices in question had all the ingredients necessary to make a destructive device, including shrapnel."); *United States v. Luster*, No. CR13-2021, 2013 WL 4647538, at *1 (N.D. Iowa Aug. 29, 2013) ("[The] destructive device consisted of a CO2 cartridge containing powder, with a fuse and shrapnel attached to it. The shrapnel consisted of nails and BBs."); *cf. United States v. Holder*, 104 F.3d 350, 1996 WL 518510 (2d Cir. 1996) (unpublished table decision) ("four inch cylinders, approximately 1.7 inches in diameter, packed with a volatile chemical compound, and topped with a fuse" were appropriately considered "destructive devices"); *United States v. Bubar*, 567 F.2d 192, 200 (2d Cir. 1977) (a "combination of dynamite, detonating cord, detonating caps and drums of gasoline" was a destructive device).

Considering all the evidence proffered by the Government, the Court concludes that the Government has shown by a preponderance of the evidence that Defendant has been charged with a crime enumerated in § 3142(f)(1)(E), and thus the Court may consider whether Defendant should be detained.

### DANGEROUSNESS

Having found that the Government has standing to seek Defendant's detention since he is charged with a crime under § 3142(f)(1)(E), the Court must consider whether any condition or combination of conditions will reasonably assure the appearance of such person as required and the safety of any other person and the community.

The factors that a court must consider in making this determination include the following: (1) the nature and circumstances of the charged offenses including whether the offense involves a "firearm, explosive, or destructive device"; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including such matters as the person's character, physical and mental condition, family ties, employment history, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of any risk of danger if the person is released. 18 U.S.C. § 3142(g). The Government bears the burden to demonstrate dangerousness by clear and convincing evidence, and risk of flight by a preponderance of the evidence. *Chimurenga*, 760 F.2d at 405.

Here, the nature and circumstances of the charged offenses support detention based on danger. Defendant is charged with making and possessing a pipe bomb, a destructive device for which danger is plainly contemplated by its express reference in the first of the § 3142(g) factors. The items were apparently discovered in Defendant's garage, when emergency personnel were called on July 21, 2015, after an explosion caused Defendant to suffer a significant injury to his lower leg (ultimately resulting in its amputation). In addition to the Nails Device or alleged "pipe bomb," law enforcement officers discovered what appeared to be six additional improvised explosive devices and related materials, including flash powder, potassium perchlorate, and shotgun shells. Also discovered in the garage, among other items, were numerous other cardboard tubes,

thus suggesting that Defendant intended to build additional devices. The garage also displayed various wall hangings that included language such as "The KKK Wants You!," along with references to Nazis, racially derogatory language, and material supportive of the confederacy during the Civil War. Defendant allegedly admitted to law enforcement that all the items in the garage were his.

In terms of the second factor, the weight of the evidence similarly supports detention based on danger. There does not appear to be a dispute that the materials discovered in the garage, including the "pipe bomb," belonged to Defendant. Although Defendant offers the explanation that he was manufacturing explosives to remove a tree stump, and perhaps that explanation will ultimately be believed by a jury, the explosive for which Defendant has been indicted certainly does not appear on its face to be an effective method of removing a tree stump. *See Dodge*, 846 F. Supp. at 184 (pipe bomb is an inherently dangerous weapon "for which no peaceful purpose can be seriously suggested"). *Cf. United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) ("pipe bombs are not typically possessed by law-abiding citizens for lawful purposes"); *United States v. Jennings*, 195 F.3d 795, 798 (5th Cir. 1999) ("we cannot conceive of any non-violent or lawful uses for a pipe bomb").

Defendant's history and characteristics also weigh in favor of detention based on danger. According to the Pretrial Services Report, Defendant has been unemployed since 2009, when he lost his employment due to alcohol use. Defendant has two driving while intoxicated charges, the first (in 2009) resulting in a disposition of driving while impaired, and the second (in 2011) resulting in a misdemeanor conviction for driving

while intoxicated. Defendant denied any mental health disorders to the United States Probation Office, but his mother apparently told the Probation Officer that her son is being treated for depression and anxiety and she identified a number of medications that he is prescribed. Defendant's mother also apparently acknowledged that her son drinks alcohol in the garage where the incident occurred, and Defendant himself admitted to consuming alcohol on a weekly basis. Defendant argues that notwithstanding these characteristics, he has no criminal history and his physical injuries preclude any finding of danger. Defendant also argued to Judge Scott that his mother would be an adequate custodian, if released. The Court disagrees. Defendant already resided with his mother at the time of the incident when he was allegedly constructing destructive devices and drinking alcohol on a regular basis in the garage of his mother's residence. When Defendant's personal characteristics and history are considered in the context of the crime with which Defendant is charged, and the evidence located at the scene of the incident, detention plainly appears necessary due to Defendant's risk of danger.

Finally, the nature and seriousness of the risk supports detention. Indeed, Defendant's own injury demonstrates the dangerous nature of his activities. *See Dodge*, 846 F Supp. at 184 (mere possession of pipe bomb presents "a 'substantial risk' of physical injury to others"); *see also Jennings*, 195 F.3d at 798 ("We hold that possession of an unregistered pipe bomb, by its very nature, creates a substantial risk of violence. . . .").

Based on the totality of the foregoing circumstances, the Court finds that the Government has established by clear and convincing evidence that Defendant would

present a grave threat to others and the community if released, and no condition or combination of conditions will reasonably assure the safety of these persons and the community. Because of the Court's finding that Defendant's danger requires his pretrial detention, the Court need not address whether detention is required due to a risk of flight.

## CONCLUSION

For the foregoing reasons, Defendant shall remain detained pending the trial in this matter. Defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded a reasonable opportunity for private consultation with counsel, and on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined shall deliver him to a United States marshal for the purpose of an appearance in connection with a court proceeding.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:   November 18, 2015
         Rochester, New York