IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

15-CR-151-W

MICHAEL C. O'NEILL,

Defendant.

## PLEA AGREEMENT

The defendant, MICHAEL C. O'NEILL, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count 2 of the Indictment which charges a violation of Title 26, United States Code, Sections 5841, 5845(a)(8), 5845(f), 5845(i), 5861(d) and 5871 (unlawful possession of a destructive device) for which the maximum possible sentence is a term of imprisonment of 10 years, a fine of $10,000, a mandatory $100 special assessment and a term of supervised release of 3 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime: (1) that the defendant knowingly possessed a National Firearm Act firearm; (2) that the firearm was a pipe bomb, that is, a destructive device as described in Title 26, United States Code, Sections 5845(a)(8) and 5845(f); (3) that the defendant knew it was a destructive device; (4) that the destructive device was in operating condition or could readily be put in operating condition; and (5) that that such firearm/destructive device was not registered to the defendant in the National Firearms Registration and Transfer Record.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a. In the very early hours of July 21, 2015, the Niagara County Sheriff's Office responded to a 911 call regarding an injury at 6761 Walmore Road, Wheatfield, NY. When emergency personal arrived at the scene they discovered Michael C. O'Neill with a significant injury to his left, lower leg, apparently the result of an explosion. O'Neill was immediately taken by Mercy flight to ECMC, where his left leg was

2

amputated below the knee. Meanwhile, personnel from the Erie County Bomb Squad entered the unattached garage of the residence where the explosion occurred. While in the garage, officers discovered what appeared to be an area of the garage where explosive devices were being manufactured. Officers discovered explosive powder and BB pellets in plain view. Upon further inspection, Bomb Squad personnel discovered six (6) destructive devices, five of which were constructed of hard cardboard tubing with sealed ends and a fuse. One of those five devices was labeled, "Powder w/Nails." The sixth device was made out of a flashlight with sealed ends and a hole with a wick coming from the center. Other items discovered on the property included two pill bottles labeled as flash powder, one bag of potassium perchlorate, thirty-six shotgun shells reloaded with fragments inside, one plastic bottle of triple seven powder, one plastic box of triple seven pellets, and plastic bottle labeled as triple seven powder.

b. Later on July 21, ATF Special Agent Jason Bernhard and Niagara County Sheriff's Department Investigator William Evans interviewed O'Neill at the Erie County Medical Center. During the interview Special Agent Bernhard asked O'Neill what he was doing in the garage when the explosion and subsequent injuries occurred. O'Neill stated that previously he had watched a video on YouTube regarding stump removal and had made a couple of M80's. When the explosion occurred, O'Neill stated he was using extra materials from the M80's to make "something." O'Neill explained that while making "something" he was using a heat gun, which ignited what he was making. He dropped the item he was making on the floor of the garage and attempted to stomp it out when it exploded. Special Agent Bernhard asked O'Neill about the other devices in the garage. O'Neill admitted that all the devices in the garage were his.

c. On July 22, 2015, Erie County Sheriff's Bomb Squad Commander Dan Walczak x-rayed the device labeled "Powder w/Nails." The x-ray revealed nails packed into the device. The device was then disassembled. Inside the device were multiple nails, BB pellets and suspected flash powder.

d. A check of the National Firearms Act records reveal that the defendant does not have any NFA registered firearms. The defendant admits to this conduct.

3

### III.   SENTENCING GUIDELINES

5.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.   The government and the defendant agree that Guidelines § 2K2.1(a)(5) applies to the offense of conviction and provides for a base offense level of 18.

### SPECIFIC OFFENSE CHARACTERISTICS
### U.S.S.G. CHAPTER 2 ADJUSTMENTS

7.   The government and the defendant agree that the following specific offense characteristics apply:

- a.   the two-level increase pursuant to Guidelines § 2K2.1(b)(1)(A) (involves more than three firearms); and

- b.   the two-level increase pursuant to Guidelines § 2K2.1(b)(3)(B) (destructive device).

### ADJUSTED OFFENSE LEVEL

8.   Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is 22.

### ACCEPTANCE OF RESPONSIBILITY

9.   At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level

4

downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 19.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is I. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11. It is the understanding of the government and the defendant that, with a total offense level of 19 and criminal history category of I, the defendant's sentencing range would be a term of imprisonment of 30 to 37 months, a fine of $10,000 and a period of supervised release of 1 to 3 years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

12. Notwithstanding the above calculations, it is the agreement of the parties pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that the Court at the time of sentence impose a 30-month term of imprisonment. If, after reviewing the presentence report, the Court rejects this agreement, the parties will be relieved of their other obligations under this agreement and the defendant shall then be afforded the opportunity to withdraw

the plea of guilty. If, after reviewing the presentence report, the Court rejects this agreement, the government may move to vacate the plea agreement. If the government moves to vacate the plea agreement, the defendant's plea shall be deemed withdrawn. This agreement does not affect the amount of a fine, the amount of restitution, or the length and conditions of a term of supervised release that may be imposed by the Court at sentencing.

13. The defendant understands that except as set forth in ¶ 12, above, the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

### IV. STATUTE OF LIMITATIONS

14. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

### V. GOVERNMENT RIGHTS AND RESERVATIONS

15. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment; and

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

16. At sentencing, the government will move to dismiss the open counts of the Indictment in this action.

17. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI. APPEAL RIGHTS

18. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence

imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

19. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

20. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII.   FORFEITURE PROVISION

### Abandonment Provision

21. The defendant voluntarily agrees to abandon all interest in and rights or claims to the property described below in order that appropriate disposition may be made by the

Niagara County Sheriff's Office. The defendant specifically waives any right to challenge the disposition of the property under Federal or State Law.

    a.    Evidentiary items to include, but not limited to: Six (6) destructive devices, nails, and flash powder.

22. Pursuant to the terms of a contemporaneously executed stipulation, the parties agree that the firearms may be transferred by Niagara County Sheriff's Office to John J. O'Neill who will maintain exclusive custody and control over the firearms including but not limited to selling the firearms to a federal Firearms licensed dealer. John J. O'Neill knowing the same agrees that he will not transfer, give, permit, oversee or otherwise allow any possession or control over these firearms by Michael C. O'Neill.

23. The defendant further agrees to unconditionally release and hold harmless the Niagara County Sheriff's Office, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), its officers, employees and agents from any and all claim, grievances, entitlements, demands, damages, causes of action or suits, whether in their official or individual capacity, of whatever kind and description and whosesoever situated that might now exist or hereafter arise by reason of, or growing out of, or affected directly or indirectly, the seizure, custody, or disposition of the above-described property. The defendant further agrees to hold harmless and indemnify the Niagara County Sheriff's Office, ATF, its officers, employees and agents to the extent of the value of the above-described property, against any claims possessed by any third party that may arise in any way from the seizure, custody or disposition of the above-described property.

24. The defendant agrees that in the event this plea agreement is voided for any reason, the agreement for forfeiture, abandonment and disposition of the properties listed above shall survive and shall be given full force and effect.

## VIII. TOTAL AGREEMENT AND AFFIRMATIONS

25. This plea agreement represents the total agreement between the defendant, MICHAEL C. O'NEILL, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
Acting United States Attorney
Western District of New York

BY: *[signature]*
LAURA HIGGINS
Assistant United States Attorney

Dated: September 20, 2017

I have read this agreement, which consists of 11 pages. I have had a full opportunity to discuss this agreement with my attorney, Joseph M. LaTona, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
MICHAEL C. O'NEILL
Defendant

Dated: September ___, 2017

_____
JOSEPH M. LaTONA, ESQ.
Attorney for the Defendant

Dated: September 20, 2017